# **EXHIBIT 2**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SEVERS,<br><br>   Plaintiff,<br><br> v.<br><br>HYP3R INC.,<br><br>   Defendant. | Case No. 22-cv-04413-DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 14 |

  Plaintiff Catherine Severs filed this action against Hyp3r Inc. ("Hyp3r) seeking recognition of a foreign money judgment pursuant to the Uniform Foreign-Country Money Judgments Recognition Act ("UFCMJRA"), California Code of Civil Procedure section 1713 *et seq*. [Docket No. 1 ("Compl.").] Severs seeks recognition of a judgment by the Supreme Court of British Columbia in the amount of $24,921,378 Canadian Dollars ("CAD") plus interest. After Hyp3R failed to appear or otherwise respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure, the clerk entered its default on August 23, 2022. [Docket No. 10.] Severs now moves the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Hyp3r. [Docket No. 14 ("Mot.").] The court held a hearing on March 23, 2023 and ordered supplemental briefing for the reasons explained below.

  Hyp3r has not filed a declination or consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, the court issues this Report and Recommendation and reassigns this case to a district judge for final disposition, with the recommendation that Plaintiff's motion be **GRANTED**.

**I. BACKGROUND**

  Severs is a resident of British Columbia, Canada. Compl. ¶ 7. On May 22, 2020, she

initiated a class action in the Supreme Court of British Columbia against Hyp3r, alleging that it breached the privacy of "all persons in Canada (excluding Quebec) who were users of Instagram with profile setting set to public at any time between April 4, 2018 and November 22, 2021." *Id.* ¶¶ 1, 12. Hyp3r was served with the complaint in accordance with the Rules of the Supreme Court of British Columbia on June 10, 2020, and on September 18, 2020, the Registrar of the Supreme Court entered a default order against Hyp3r. *Id.* ¶¶ 13, 15. On January 13, 2021, Severs was ordered to serve Hyp3r with its application to assess damages. *Id.* ¶ 16. Hyp3r was subsequently served with the notice of application and all supporting evidence on January 14, 2021. *Id.*

The Supreme Court of British Columbia rendered judgment on Severs' application on November 22, 2021, awarding monetary damages against Hyp3r in the amount of $24,921,378 CAD. Compl. ¶ 18, Ex. 1 (British Columbia Judgment dated July 28, 2022). The Supreme Court also authorized Severs to enforce the monetary judgment on behalf of the class. *Id.* ¶ 20, Ex. 2 (British Columbia Order dated November 22, 2021 and entered on July 11, 2022). Pursuant to British Columbia law, post-judgment interest started accruing on November 23, 2021. As of July 28, 2022, (the day before this lawsuit was filed) the total judgment including accrued interest amounted to $25,335,100.11 CAD, or $19,974,061.90 USD.[1] *Id.* ¶ 23.

In the complaint, Severs alleges two claims for relief: 1) recognition of the British Columbia judgment under California's UFCMJRA; and 2) recognition of the judgment under "traditional principles of international comity." Compl. ¶¶ 11-30. Severs appears to have abandoned the second claim for relief in her motion for default judgment. *See* Mot. at 4. She also no longer seeks attorneys' fees and costs except for costs permitted under Federal Rule of Civil Procedure 54. *Id.*

**II.    LEGAL STANDARDS**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion.

---

[1] The complaint converts the CAD amount to USD using the Federal Reserve exchange rate on the day of the British Columbia judgment, which was $1.2684 CAD/USD. Compl. ¶ 23.

*Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))).

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**III. ANALYSIS**

**A. Jurisdiction**

Before entering default judgment, a federal court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). In the present matter, the court has subject matter jurisdiction and personal jurisdiction over the parties.

**1. Subject Matter Jurisdiction**

Severs asserts that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. A district court has diversity jurisdiction where the parties are diverse and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28

3

1 U.S.C. § 1332.  Parties are diverse when they are citizens of a state and citizens of a foreign state.
2 *Id.* § 1332(a)(2).  A corporation is considered a citizen of both the state in which it is incorporated
3 and the state where it has its principal place of business.  *Id.* § 1332(c)(1).  Here, Severs resides in
4 British Columbia, Canada.  Compl. ¶ 7.  Hyp3r is a corporation formed under the laws of the state
5 of Delaware with its alleged principal place of business in San Francisco, California, as further
6 explained below.  *Id.* ¶ 8.  The amount in controversy exceeds $75,000 USD.  Accordingly, this
7 court has subject matter jurisdiction over this case.

### 2.     Personal Jurisdiction

9       The court next examines whether it has personal jurisdiction over Hyp3r.  Personal
10 jurisdiction may be either general or specific.  *Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San*
11 *Francisco Cty.*, 137 S. Ct. 1773, 1780) (2017).
12       "With respect to a corporation, the place of incorporation and principal place of business
13 are 'paradig[m] . . . bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137
14 (2014) (quoting A General Look at General Jurisdiction, 66 Texas L. Rev. 721, 728 (1988)).
15 Either basis is sufficient for the exercise of general jurisdiction over corporations.  *AM Tr. v. UBS*
16 *AG, 681 F. App'x 587*, 588 (9th Cir. 2017) ("[A] corporation is typically subject to general
17 personal jurisdiction only in a forum where it is incorporated or where it maintains its principal
18 place of business." (emphasis added).
19       Severs alleges that "at the material times" Hyp3r was authorized to do business from its
20 principal place of business in San Francisco.  Compl. ¶ 8.  She submits evidence that Hyp3r
21 registered as a corporation in California on June 28, 2016.  [Docket No. 14-4 (Kevin McLaren
22 Decl., Feb. 1, 2023), Ex. B (Hyp3r's registration with the California Secretary of State).]
23 However, Hyp3r's registration appears to have been "forfeited," showing an inactive date of
24 January 25, 2022.  *Id.*
25       "It is well-established that the jurisdiction of the court depends upon the state of things at
26 the time of the action brought."  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th
27 Cir. 2008) (quotation and citation omitted)).  Here, the complaint was filed on July 29, 2022, about

six months after Hyp3r lost its active status in California.[2] Severs originally did not address the issue of Hyp3r's lapsed registration status, so the court ordered supplemental briefing on this point.

In its supplemental briefing, Severs continues to maintain that the court has general jurisdiction over Hyp3r. [Docket No. 18 ("Supp. Brief.") at 3.] In the alternative, she contends that the court has specific jurisdiction.

Severs makes a factual and a legal argument to support the existence of general jurisdiction. As to the factual argument, Severs points to evidence demonstrating that Hyp3r's principal place of business was in California at some point, and may continue to be located in California to this day. See Docket No. 18-1 (Kevin McLaren Supp. Decl., April 11, 2023) ¶ 8, Ex. E (article posted on Hyp3r's website claiming that Hyp3r is "a tech company headquartered in San Francisco"); ¶ 9, Ex. F (article posted on Hyp3r's website stating that Hyp3r is a "little company in the heart of San Francisco); ¶ 10, Ex. G. (article posted on Hyp3r's website, noting "HYP3R, one of Fast Company's Most Innovative Companies, is based in San Francisco"); ¶ 11, Ex. H (press release issued by Hyp3r stating that Hyp3r "was founded in 2015 and is based in San Francisco); ¶ 12, Ex. I (Hyp3r's LinkedIn page, showing its headquarters in San Francisco, California); ¶ 13, Ex. J (Hyp3r's Twitter account, listing its location as "San Francisco, CA").

According to Severs, the fact that Hyp3r's registration with the California Secretary of State is marked as "inactive" is not conclusive evidence that it is no longer active in California. In support, Severs points to Hyp3r's continued "Good" standing with the California Franchise Tax Board. Supp. Brief at 8; see McLaren Decl., Ex. B (printout from California Secretary of State website)). Severs also highlights evidence that after Hyp3r's registration with the California Secretary of State was marked as inactive, Hyp3r represented to the United States Patent and Trademark Office ("USPTO") that it was a resident of San Francisco, California. See McLaren Supp. Decl. ¶ 17, Ex. M (USPTO "Issue Fee Transmittal Form" dated June 18, 2022, filed by Hyp3r with the USPTO). One of Hypr3r's applications with the USPTO indicates that the

---

[2] The fact that Hyp3r "*had* registered locally with the State of California Secretary of State" does not cure the issue. McLaren Decl. ¶ 8 (emphasis added).

5

company was in San Francisco even after the complaint was filed. *Id.* ¶ 18, Ex. N (printout of USPTO data dated April 9, 2023 for application number 17/381,097). Severs claims this evidence is particularly compelling because Hyp3r's residence has not changed on the USPTO's website, even though Hyp3r had multiple communications with the USPTO between July 20, 2021 and March 3, 2023. Supp. Brief. At 9; *see* McLaren Supp. Decl. ¶ 18, Ex. O (printout of USPTO documents and transactions history page dated April 9, 2023).

The court need not determine whether Hyp3r is currently operating as an active California corporation. This is because Severs' second argument is persuasive. Severs asserts that even if Hyp3r is now defunct in California, the case law supports a finding that Hyp3r is nevertheless a citizen of California for purposes of establishing general jurisdiction. Supp. Brief. at 10. The Ninth Circuit has yet to provide a test for determining the citizenship of a defunct or inactive corporation for the purpose of analyzing personal jurisdiction, and there is a three-way split on the issue:

> Some courts look to both to the state of incorporation and to the state of the corporation's last business activity. * * * Some courts hold an inactive corporation has no "place of business" and therefore is a citizen only of its state of incorporation. * * * Other courts adopt a case-by-case approach: i.e., if the corporation has been inactive for a substantial period of time (e g, 5 years), it is a citizen only of the state where it is incorporated. Otherwise, the court must examine the company's activities as it was closing its doors and determine whether its business had a continuing impact in that locale. If so, the place of its last business activity would be relevant to (but not dispositive of) the determination of its "principal place of business."

*Patel v. Sugen, Inc.*, 354 F. Supp. 2d 1098, 1111-12 (N.D. Cal. 2005) (quoting Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial* at ¶ 2:321.5-7 (2004) (analyzing citizenship of a defunct or inactive corporation for diversity jurisdiction purposes)); *see also Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631, 634 (E.D. Tex. 2006) (reviewing same split on the proper test for determining the citizenship of a defunct or inactive corporation for personal jurisdiction purposes).

Severs asks the court to apply the third, or "functional approach," in determining the citizenship of Hyp3r by examining the length of the period of its inactivity. *See* Supp. Brief. at 10 (citing *Patel*, 354 F. Supp. 2d at 1112-13 (N.D. Cal. 2005)). Courts in this circuit favor the

1  functional approach on the ground that it "best equips the court to carry out the intent of
2  Congress." *See Homestead Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1137
3  (N.D. Cal. 2003); *Sellers v. Kohlberg & Co., LLC*, No. C 01-01365 WHA, 2001 WL 761187, at *3
4  (N.D. Cal. Jun. 29, 2001); *Patel*, 354 F. Supp. 2d. at 1112; *Parker v. Moore*, No. C 08-1896 PJH,
5  2008 WL 2220613, at *1 (N.D. Cal. May 27, 2008); *Sports Shinko Co. v. QK Hotel, LLC*, 486 F.
6  Supp. 2d 1168, 1178 (D. Haw. 2007).
7       The court agrees with the reasoning of these cases and applies the functional approach
8  here. Under that test, "[w]hen a *substantial period of time* has lapsed since a corporation was
9  active, its citizenship reverts to include only its state of incorporation. *See Homestead*, 282 F.
10 Supp. 2d at 1136 (emphasis added) ((citing *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 291-
11 92 (4th Cir. 1999) (three-year period of inactivity in Maryland rendered it an out-of-state
12 corporation), and *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992) (five-year
13 period of inactivity is a substantial period of time)).
14      Here, the operative date for determining personal jurisdiction is July 29, 2022, the date
15 Severs filed the complaint in this case. Hyp3r became inactive on the California Secretary of State
16 website on January 25, 2022. Accordingly, Hyp3r had been a defunct corporation for just over six
17 months at the time Severs commenced this action. Severs further notes that Hyp3r represented to
18 the USPTO that it was located in San Francisco, California as late as June 28, 2022, when it filed
19 its patent application. Between one and six months of inactivity does not amount to a substantial
20 period of time. *Compare* Sellers, 2001 WL 761187, at *4 ("less than two years of inactivity is not
21 sufficient enough of time for it to be removed from local interests...") *and Patel*, 354 F. Supp. 2d
22 at 1113 (six month period of inactivity is not a substantial period of time)*, with Homestead*, 282 F.
23 Supp. 2d at 1137 (13 years is substantial)*, and Ibrahim v. Fiat Chrysler Automobiles*, No.
24 CV1910744MWFPLAX, 2020 WL 7094066, at *1 (C.D. Cal. Oct. 28, 2020) (three years is a
25 substantial period of inactivity).
26      Applying the functional approach, the court concludes that, even assuming Hyp3r became
27 an inactive California corporation as of January 25, 2022, Hyp3r was a citizen of California for
28 purposes of personal jurisdiction because it had not been inactive for a substantial period of time at

7

the time this case was filed. Because the court finds that it has general jurisdiction over Hyp3r, it does not analyze the question of specific jurisdiction.

### B.  Adequacy of Service

The court must also assess the adequacy of service of the summons and complaint on Hyp3r before evaluating the merits of the motion for default judgment. Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a domestic corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual," which, in turn, allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Pursuant to Rule 4(h)(1), service of a corporation can be effectuated by following state law for serving a summons in the state where the district court is located.

Under California law, a corporation may be served by delivering a copy of the summons and complaint (1) to the person designated as an agent for service of process under certain provisions of the California Corporations Code, or (2) to the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant general, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(a), (b).

Sever's initial evidentiary support for proper service was confusing. The proof of service for the summons and complaint indicates that the documents were served on "Heather Howie, Front Desk Coordinator, who is designated by law to accept service of process on behalf of HYP3R INC. served at 1013 Centre Road, Suite 403-B, Wilmington, DE, 19805." [Docket No. 7.] Hyp3r was served with court documents in the British Columbia case at the same address. McLaren Decl., Exs. D, E (affidavits of service). Severs explained that the address corresponds to Hyp3r's registered agent's office in Delaware. Mot. at 6. However, Hyp3r's registration on the State of Delaware website identifies its registered agent as VCORP SERVICES, LLC, located at 108 W. 13th Street Suite 100 in Wilmington, Delaware. *See* McLaren Decl., Ex. A. In addition, the proof of service for the instant motion for default judgment indicates that the documents were served on "Robin Hutt-Banks, Intake Specialist" for "Hyp3r Inc. c/o: VCORP Services, LLC / 108

8

1   W. 13th Street / Suite 100 / Wilmington, DE 19801." [Docket No. 15 (Affidavit of Service for
2   Motion for Default Judgment served on Registered Office on February 3, 2023).]

3        In the requested supplemental briefing, Severs clarifies that both addresses were correct on
4   the respective dates of service. Supp. Brief. at 2. The summons and complaint were served on
5   August 1, 2022, when Hyp3r's address was listed as 1013 Centre Rd, Suite 403-B, Wilmington,
6   DE on the Delaware Division of Corporations website. *See* McLaren Supp. Decl. ¶¶ 4-5, Exs. A-
7   B. Severs' motion for entry of default judgment was served on February 3, 2023. The address for
8   service was obtained a day earlier, on February 2, 2023, from the same website. At that time,
9   Hyp3r's address was listed as 108 W. 13th Street, Suite 100, Wilmington, DE 19801. McLaren
10  Supp. Decl. ¶¶ 6-7, Exs. C-D.

11       In light of Severs' supplemental evidence, the court finds that service of the summons and
12  complaint was properly effectuated on Hyp3r.

13       **C.**    **Application of the *Eitel* Factors**

14       The court now turns to the *Eitel* factors to determine whether default judgment should be
15  granted. Turning to the first *Eitel* factor, Severs will suffer prejudice if the court does not enter a
16  default judgment against Hyp3r because Severs otherwise has no means to recover the damages to
17  which she is entitled under British Columbia law. *See Walters v. Shaw/Guehnemann Corp.*, No. C
18  02-04058 WHA, 2004 WL 1465721, at *2 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion
19  [for default judgment] would leave them without a remedy."). Thus, the first factor weighs in
20  favor of entering default judgment.

21       The second and third *Eitel* factors—the merits of Severs' substantive claim and the
22  sufficiency of the complaint—also weigh in favor of default judgment. Severs' complaint pleads
23  the elements of a claim on which she can recover. Severs seeks recognition of the British
24  Columbia judgment under the UFCMJRA.

25       In *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1212–13
26  (9th Cir. 2006), the Ninth Circuit noted that no federal statute governs the recognition of foreign
27  judgments, leaving courts to look to the law of the state in which enforcement is sought to
28  determine the enforceability of judgments of courts of other countries. The UFCMJRA is

9

recognized under California Code of Civil Procedure section 1713 *et seq.* and applies to the present request for a "sum of money" judgment. *See* Cal. Code Civ. Proc. § 1715.

A foreign-country money judgment may be enforced under California law if the judgment (1) grants recovery of a sum of money; (2) is final, conclusive, and enforceable under the law of the country where it was rendered; and (3) is not a judgment for taxes, a fine, or other penalty, or a judgment arising from domestic relations. Cal. Civ. Proc. Code § 1715; *see also Grundig Multimedia AG v. Eton Corp.*, No. 20-CV-05206-NC, 2021 WL 411237, at *2 (N.D. Cal. Feb. 5, 2021). The party seeking recognition of a foreign-country money judgment has the burden to establish these statutory requirements, while the party resisting recognition has the burden of establishing a specified ground for non-recognition. Cal. Civ. Proc. Code §§ 1715(c), 1716. Unless one of the specified defenses applies, the court "shall recognize a foreign-country judgment to which [the UFCMJRA applies]." Cal. Civ. Proc. Code § 1716(a).

Here, Severs has established that the statutory requirements are satisfied for recognition of the British Columbia judgment. She has presented evidence that the British Columbia court issued a judgment in her favor granting recovery of a sum of money. *See* McLaren Decl. ¶¶ 12-13, Exs. F (reasons for judgment), G (formal court order from the supreme court of British Columbia). The judgment is final, conclusive, and enforceable under the laws of British Columbia. *See* McLaren Decl. ¶ 14, Ex. H (formal certificate issued and sealed by the Supreme Court of British Columbia and endorsed by the Court of Appeal confirming there are no pending appeals). The British Columbia judgment is a "compensatory award between civil litigants" and therefore is not a "fine or penalty" for purposes of the UFCMJRA. *See Moersch v. Zahedi*, 724 F. App'x 583, 584 (9th Cir. 2018). In addition, post-judgment interest requested by Severs is not generally considered a penalty because "upon entry of a sister state money judgment, that judgment includes the amount of interest accrued on the judgment computed at the rate of interest applicable to the judgment under the law of the sister state." *Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA), Inc.*, No. CV1500862BROAJWX, 2015 WL 12859716, at *5 (C.D. Cal. Nov. 24, 2015) (quoting *Hyundai Sec. Co. v. Lee*, 232 Cal. App. 4th 1379, 1390 (2015)).

Hyp3r has not provided any contrary evidence and therefore has not met its burden of

establishing grounds for non-recognition. *See* Cal. Civ. Proc. Code § 1716 ("If the party seeking recognition of a foreign-country judgment has met its burden of establishing recognition of the foreign-country judgment . . . a party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition exists."). In light of these factual allegations and the pertinent law, Plaintiffs have sufficiently stated a legal claim for relief that appears to have merit.

The fourth *Eitel* factor focuses on the amount of money at issue in the action. "[C]ourts should be hesitant to enter default judgment in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Tr. v. Core Concrete Const., Inc.*, No. C-11-02532-LB, 2012 WL 380304, at *1, *4 (N.D. Cal. Jan. 7, 2012). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* The total amount of money Severs seeks is $25,878,932.73 CAD or $20,402,816.72 USD, plus post-judgment interest at a rate of 6.45% from February 3, 2023 to the date of the district court's order, and post-judgment interest pursuant to 28 U.S.C. § 1961(a).[3] Supp. Brief. at 15-16. This factor weighs in favor of granting default judgment because the amount sought is specifically tailored to the judgment previously awarded by the British Columbia court plus interest.

The fifth and sixth factors—"the possibility of a dispute concerning material facts" and whether the default was due to excusable neglect—weigh in favor of default judgment. *Eitel*, 782 F.2d at 1471-72. Hyp3r has not appeared or filed any responsive pleading in this action, let alone contested any of Severs' material facts. That the British Columbia court previously entered judgment in Severs' favor suggests that her claim is supported by sufficient evidence. Nothing in the record indicates that Hyp3r's default was due to excusable neglect. Severs served Hyp3r with the summons and complaint and has continued serving it with submissions relating to the case

---

[3] Severs also asks the court to find that she is entitled to costs for this action after judgment is granted. Mot. at 21-22. California courts recognize awards of litigation costs in foreign-country money judgments. *See* Cal. Civ. Proc. Code § 1716 *et seq.*

11

throughout the pendency of this action.  [Docket Nos. 7, 15, 19.]  *See Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005 (finding no excusable neglect because defendant was properly served with the complaint and subsequent submissions relating to the case).

Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the seventh *Eitel* factor—that the Federal Rules of Civil Procedure favor decisions on the merits.  *See Transamerican Life Ins. Co. v. Estate of Ward*, CIV S-11-0433 JAM EFB, 2011 WL 5241257, at *4 (E.D. Cal. Oct. 31, 2011) (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).  The court therefore recommends that Severs' motion for default judgment be granted.

**D.     Remedies**

Although the factual contentions of the operative complaint are accepted as true when determining the liability of a defaulting defendant, this rule does not apply to statements regarding damages.  *See TeleVideo*, 826 F.2d at 917-18.  To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

On November 22, 2021, the British Columbia court awarded Severs and the class members a monetary judgment in the amount of **$24,921,378 CAD**.  McLaren Decl. ¶ 14.  Under the British Columbia Court Order Interest Act, RBSC 1996, chapter 79 (the "Court Order Interest Act"), interest on that judgment accrued at a prescribed rate.  *Id.* ¶ 26.  From November 23, 2021 to July 28, 2022, (the day before this case was filed) post-judgment interest amounted to **$413,722.11 CAD**.  McLaren Decl. ¶¶ 14.  This amount was reflected in the Supreme Court of British Columbia's order dated July 28, 2022.  *See* McLaren Decl., Ex. H (formal certificate issued and sealed by the Supreme Court of British Columbia for monetary judgment).

**1.     Post-Judgment Interest under British Columbia Law**

Plaintiff also seeks accrued interest based on prescribed British Columbia interest rates under the Court Order Interest Act from July 29, 2022 through February 2, 2023, the date Plaintiff filed the motion for default judgment. (3.7% for July 29, 2022 to December 31, 2022 and 6.45%

12

from January 1, 2023 to February 2, 2023). Mot. at 21; McLaren Decl. ¶¶ 26 (explaining that under the Court Order Interest Act, post-judgment interest is payable at an "annual simple interest rate that is equal to the prime lending rate of the banker to the government"); *see also* McLaren Supp. Decl. ¶¶ 22-25, Exs. R (Court Order Interest Act), S (summary from the British Columbia Courthouse Library Website explaining the operation of the Court Order Interest Act); [Docket No. 14-2 (Simon Lin Decl., Feb. 2, 2023) ¶ 6, Ex. A (Court Order Interest Rates from the Supreme Court of British Columbia Website listing applicable interest rates from 1991 to the present).][4] In addition, Plaintiff seeks an interest rate of 6.45% for the period February 3, 2023 to the date of this order. Mot. at 21; *see also* Supp. Brief at 16. "Section 1719, subdivision (a) [of the UFCMJRA] provides that recognition of a foreign-country money judgment has the same conclusive effect as does entry of a sister state judgment. Upon entry of a sister state money judgment, that judgment includes the amount of interest accrued on the judgment 'computed at the rate of interest applicable to the judgment under the law of the sister state.'" *Hyundai Sec. Co.*, 232 Cal. App. 4th at 1390 (quoting § 1710.25(a)(2)). Plaintiff argues that "by operation of British Columbia law, the interest continues to accrue until the judgment is fully paid." *See* Supp. Brief. at 18 (citing McLaren Supp. Decl. ¶¶ 22-25, British Columbia Court Order Interest Act, Summary from the British Columbia Courthouse Library Website). Under section 9 of British Columbia's Court Order Interest Act, post-judgment interest is deemed to be included in the court's judgment for enforcement purposes. *See* McLaren Supp. Decl. ¶ 24, Court Order Interest Act. From February 3, 2023 to the date of this order, the applicable post-judgment interest rate in British Columbia

---

[4] Between July 29, 2022 and December 31, 2022, the prescribed interest rate under the Court Order Interest Act was 3.7 percent. *See* Court Order Interest Rates from the Supreme Court of British Columbia Website; *see also* McLaren Decl. ¶ 26 (stating that the prescribed rate for this period was 3.7%). As a result, the accrued interest during that period totaled $394,099.68 CAD. *Id.* ¶ 27 (calculating daily post-judgment interest of $2,526.28 CAD for 156 days); *see also* Supp. Brief. at 15 (calculating 156 days at the rate of 3.7 percent).

Between January 1, 2023 and February 2, 2023 (date of filing of the motion for default judgment), the prescribed interest rate was 6.45 percent. *See* Court Order Interest Rates from the Supreme Court of British Columbia Website. As a result, the accrued interest during that period totaled $145,329.03 CAD. *Compare* Supp. Brief. at 15 (erroneously calculating daily post-judgment interest of $4,403.91 CAD for 34 days instead of 33 days), *with id.* at 16 (requesting "interest up to the filing [of] the motion for default judgment (i.e., February 2, 2023)," not February 3, 2023).

1  was 6.45%.  *See* Court Order Interest Rates from the Supreme Court of British Columbia Website.

2  Accordingly, the court recommends applying Plaintiff's requested interest rates pursuant to

3  section 1710.25(a)(2).  *See also Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA), Inc.*, No.

4  CV1500862BROAJWX, 2015 WL 12859716, at *5 (C.D. Cal. Nov. 24, 2015) (applying a 6.4%

5  post-judgment interest rate on a judgment from China); *Hyundai*, 232 Cal. App. 4th at 1390-92

6  (applying a 20% post-judgment interest rate on a judgment from Korea).

### 2.   Post-Judgment Interest under 28 U.S.C. § 1961

8  Separately, Plaintiff requests post-judgment interest as permitted under 28 U.S.C. §

9  1961(a).[5]  Supp. Brief. at 16-17.

10  "Interest shall be allowed on any money judgment in a civil case recovered in a district

11  court."  28 U.S.C.A. § 1961(a); *see also Air Separation, Inc. v. Underwriters at Lloyd's of London*,

12  45 F.3d 288, 290 (9th Cir. 1995) ("[P]ostjudgment interest on a district court judgment is

13  mandatory.").  Post-judgment interest is "calculated from the date of the entry of the judgment, at

14  a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

15  Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of

16  the judgment." *Id.*

17  Accordingly, the court recommends awarding Plaintiff post-judgment interest at the rate

18  specified in 28 U.S.C. § 1961(a).  *See Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1003–1005

19  (10th Cir. 2005) (applying federal post-judgment rate to an English judgment recognized by a

20  United States District Court under New Mexico's Uniform Foreign-Money Judgments

21  Recognition Act); *AIG Eur. S. A. v. McCaughey*, No. CV 22-588-MWF (JEM), 2023 WL

22  3528453, at *7 (C.D. Cal. Mar. 7, 2023) (applying federal post-judgment rate to an Irish judgment

23  recognized under California's Uniform Foreign-Money Judgments Recognition Act).

---

[5] Post-judgment interest is determined by federal law.  *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988).  Indeed, once a claim is reduced to judgment in a federal action, post-judgment interest must be calculated pursuant to section 1961 as opposed to the prescribed state rate.  *Madrigal v. Allstate Ins. Co.*, No. CV 14-4242-SS, 2016 WL 6694968, at *6 (C.D. Cal. May 19, 2016), *aff'd sub nom. Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017).

In sum, the court recommends granting the following award: $24,921,378 CAD in principal, plus $413,722.11 CAD in interest up to July 28, 2022, and $539,428.71 CAD in interest between July 29, 2022 and February 2, 2023, for an aggregate amount of $25,874,528.82 CAD, or $20,399,344.70 USD.[6]  In addition, the court recommends granting post-judgment interest at a rate of 6.45% from February 3, 2023 to the date of the district court's entry of judgment, as well as interest pursuant to 28 U.S.C. § 1961(a) to begin accruing after the district court enters judgment in this case.

### IV. CONCLUSION

For the foregoing reasons, the court recommends that Severs' motion for default judgment be granted.  The court further recommends that Plaintiff be entitled to recover a total of $25,874,528.82 CAD or $20,399,344.70 USD, in addition to post-judgment interest at a rate of 6.45% from February 3, 2023 to the date of the district court's order, and post-judgment interest pursuant to 28 U.S.C. § 1961(a) to begin accruing from the date of entry of judgment in this case.

Not later than three days from the date of this report and recommendation, Severs shall serve Hyp3r with a copy of the report and recommendation by any means reasonably calculated to provide actual notice, **and file proof of service to that effect**.  Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: August 11, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

---

[6] At the time the judgment was rendered, the applicable exchange rate was $1.2684 CAD/USD. McLaren Decl. ¶ 15 (citing U.S. Federal Reserve website).

15