UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SEVERS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CARLOS GARCIA, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-01456-EMC   (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GARCIA'S MOTION TO DISMISS**<br><br>Docket No. 35 |

Plaintiff Catherine Severs seeks to enforce a foreign default judgment against new parties, HYP3R MEDIA INC and Carlos Garcia, and to recover assets from an allegedly fraudulent conveyance. Currently before the Court is Defendant Garcia's 12(b)(6) motion to dismiss on all counts. Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss as to Counts I, IV, and V with leave to amend and **DENIES** the motion as to Counts II and III.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Back in 2020, Severs initiated a class action in the Supreme Court of British Columbia against HYP3R INC ("HYP3R"), a Delaware corporation, alleging that it breached the privacy of Canadian Instagram users with public profiles ("Canada Action"). After HYP3R failed to appear or defend, the Canadian court entered default and awarded monetary damages to Severs and her class. In 2023, Severs obtained an order from this district domesticating the Canadian judgment. *See* 3:22-cv-04413-RS, Dkt. No. 25. The total judgment is for $21,170,775.

According to Severs, approximately one month after the Canada court entered a default order against HYP3R, Defendant Garcia caused HYP3R MEDIA to be incorporated. HYP3R

MEDIA is a Delaware corporation with a principal place of business at 544 Silverado Drive, Tiburon, California 94920. Severs alleges that Garcia is and was the CEO, director, and majority shareholder of both HYP3R and HYP3R MEDIA, that Garcia and HYP3R MEDIA currently use the same office location, and that HYP3R previously used the same location. As the post-default judicial proceedings against HYP3R were ongoing, Plaintiff alleges that Garcia caused HYP3R and HYP3R MEDIA to enter into a "series of transactions that had the effect of transferring all of Defendant HYP3R's intellectual property rights to Defendant HYP3R Media." This included five patent applications and four trademarks. *See* Dkt. No. 1, Ex. 4-5. Plaintiff also alleges that HYP3R transferred to HYP3R MEDIA all of its remaining assets, leaving HYP3R insolvent. Plaintiff now seeks to enforce the Canadian judgment against HYPER MEDIA and Garcia, and either void the transaction of these assets or obtain an equivalent money judgment from HYP3R MEDIA.

Garcia moves to dismiss on all counts for failure to state a claim.

## II.   DISCUSSION

### A. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).[1]

### B. Count I: Enforcement of Judgments Against Alter Egos

Federal Rule of Civil Procedure 69(a) "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *In re Levander*, 180 F.3d 1114, 1122 (9th Cir. 1999). In this case, the relevant state law is Section 187 of the California Code of Civil Procedure, which permits the amendment of a judgment to add a judgment debtor. *Hernandez v. Vesme, Corp*, No. 19-cv-01874-JST, 2024 U.S. Dist. LEXIS 62373, at *3 (N.D. Cal. Apr. 4, 2024). One step a court may take on a proper showing is to add to a judgment a party which is the alter ego to the judgment debtor. *Highland Springs Conference & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 280 (Cal. App. 2016). Adding an alter ego of an original judgment debtor to a judgment "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant.'" *McClellan v. Northridge Park Townhome Owners Assn.* 89 Cal.App.4th 746, 752 (Cal. App. 2001). Alternatively, the plaintiff may initiate an independent action, as Plaintiff did, seeking to enforce the judgment against the alter ego. *See Highland Springs*, 244 Cal.App.4th at 288 ("As an alternative to filing a section 187 motion to add a judgment debtor to a judgment, the judgment creditor may file an independent action on the judgment, alleging that the proposed judgment debtor was an alter ego of an original judgment debtor."); *accord Lopez v. Escamilla*, 48 Cal. App. 5th 763, 765 (Cal. App. 2020) ("It does not matter whether the petition alleging [Defendant] is an alter ego of the corporation is labeled a complaint or a motion, or whether the petition is assigned a case number different from the underlying action.").

---

[1] The parties dispute whether Rule 9's heightened pleading standards apply to Plaintiff's various claims. Because the Rule 9 pleading standard would not change the result for any count since the Court finds the material allegations here were specific enough to satisfy Rule 9, the Court does not resolve the dispute.

This power, however, is limited by due process considerations. In *Motores de Mexicali, S. A. v. Superior Court of L.A. Cty.*, 51 Cal. 2d 172, 176 (Cal. 1958), the California Supreme Court declined to allow alleged alter ego parties to be added to a judgment where the alleged alter ego parties "in no way participated in the defense of the basic action," which had been entered "strictly by default." *Id.* The California Supreme Court held that to amend the judgment against the alleged alter ego parties "without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate th[e] constitutional safeguard" of the Fourteenth Amendment. *Id.*

Accordingly, to add a judgment debtor under Section 187, a judgment creditor must show, by a preponderance of the evidence, that "(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone." *Highland Springs*, 244 Cal. App. 4th at 280. "To have control over the litigation sufficient to meet the requirements of Section 187, the party sought to be added to the judgment must have had the opportunity to litigate, in order to satisfy due process concerns." *DEPCOM Power, Inc. v. CSUN Solar, Inc.*, No. 18-cv-00729-JST, 2020 U.S. Dist. LEXIS 160628, at *37 (N.D. Cal. July 27, 2020).

The ability to enforce a judgment directly against an alter ego obtains even when the prior judgment was awarded by default. An alter ego who had control over the litigation leading to the judgment but made an "intentional strategic decision to default," may be subject to the judgment consistent with due process. *Lopez v. Escamilla*, 79 Cal. App. 5th 646, 654, 295 Cal. Rptr. 3d 63, 70 (Cal. App. 2022).

Severs alleges that Garcia was the "Chief Executive Officer," "director," and "majority shareholder" of HYP3R and that Garcia "controlled all aspects" of HYP3R. However, Severs does not allege that Garcia controlled the underlying Canada Action – *i.e.,* that he had the ability to prevent entry of default judgment but chose not to do so. Severs argues that the Court may draw an inference from Garcia's position of authority within HYP3R and alleged control of "all

4

aspects" of HYP3R that he had control over the Canada Action. However, the plaintiff has not alleged such and the court is reluctant to rest on an inference in light of the due process concerns. The Court therefore dismisses Plaintiff's first count with leave to amend.

### C. Counts II and III: California Uniform Voidable Transactions Act Claim

Plaintiff's second and third claims are brought under the California Uniform Voidable Transactions Act Claim ("CUVTA") (previously known as the California Uniform Fraudulent Transfer Act) for actual and constructive fraudulent transfer. This act provides a creditor with a cause of action to recover assets that have been transferred away by a debtor under unjust circumstances. *See* Cal. Civ. Code § 3439.04.

CUVTA defines a creditor as "a person that has a claim" against a debtor, where claim means "a right to payment," whether reduced to judgment or not. *See id.* § 3439.01. A claim for fraudulent transfer requires a showing of "actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 3439.04. Constructive transfer occurs under § 3439.05 if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Kelleher v. Kelleher*, No. 13-CV-05450-MEJ, 2014 WL 94197, at *5 (N.D. Cal. Jan. 9, 2014). In determining actual intent, courts may consider eleven statutory factors. Cal. Civ. Code § 3439.04. "No single factor necessarily is determinative, and no minimum or maximum number of factors dictates a particular outcome." *In re Ezra*, 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015).

Plaintiff alleges that she has an outstanding judgment against HYP3R but makes no allegations that she has any right to payment from Garcia, except to the extent that Garcia is an alter ego of HYP3R or HYP3R MEDIA. Therefore, before considering the CUVTA elements, the Court must first consider whether Plaintiff has sufficiently pled that Garcia is an alter ego of HYP3R or HYP3R MEDIA.[2]

---

[2] The parties dispute whether Garcia qualifies as a "person for whose benefit the transfer was made" under § 3439.08. "The paradigm example of a transfer beneficiary is a guarantor." *Uecker v. Wells Fargo Capital Fin.*, LLC, 527 B.R. 351, 359-60 (N.D. Cal. 2015) *citing Danning v. Miller (In re Bullion Reserve of N. Am)*, 922 F.2d 544, 547 (9th Cir. 1991); *see also Lo v. Lee*, 24 Cal.

"Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to a third person." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (Cal. App. 1994). To impute alter ego liability, a plaintiff must show that (1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone. *Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (Cal. App. 2011). The "mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004). That said, courts in this district have held that the "pleading of at least two factors in support of a unity of interest satisfies this element." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. C 13-1247 JSW, 2013 U.S. Dist. LEXIS 104603, at *16 (N.D. Cal. July 25, 2013); *accord Paul v. Palm Springs Homes, Inc.*, 192 Cal. App. 2d 858, 863 (Cal. App. 1961) (pleading sole ownership sufficient to satisfy unity of interest). Further, "The alter-ego doctrine is not limited to intentional fraud, nor does it require bad faith." *City & Cty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020).

Defendant points to California authority for the proposition that "An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity" and that "[d]ifficulty in enforcing a judgment does not alone satisfy" the inequitable result element. *Leek*, 194 Cal. App. 4th 399 at 415. But in

---

App. 5th 1065, 1073 (Cal. App. 2018) (California courts look to § 3439.08's bankruptcy code counterpart as persuasive authority). Plaintiff's theory is that Garcia is a transfer-beneficiary because he was the majority shareholder for the transferee HYP3R MEDIA. While at least one court in this circuit has found that argument persuasive, the position more consistent with corporate law is that shareholders, officers, and directors are not liable for transfers to their corporation unless they "actually received distributions of the transferred property" (making them subsequent transferees under §3439.08) or "a showing can be made to pierce the corporate veil." *Compare Qwest Communs. Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1191 (S.D. Cal. 2003) *with Schechter v. 5841 Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 645-46 (Bankr. N.D. Ill. 2006). Accordingly, the benefit-transferee analysis here collapses into the alter ego analysis and does not, under the facts alleged, provide a different route to establish Garcia's liability.

6

*Leek*, there was "no evidence [Defendant] has diverted assets from the corporation to avoid paying creditors" and "nothing to indicate that plaintiffs, if successful against the corporation, will not be able to collect on any judgment against the corporation." *Id.* The absence of the second factor of the alter-ego test, an inequitable result from abiding by the corporate form, was decisive in the decision.

In contrast, in *Philips N. Am. LLC v. KPI Healthcare, Inc.*, the district court found it necessary to pierce the corporate veil when a company, while a lawsuit against it was pending, dissolved that entity and "created a new entity with the same name, officers, address, website, and promotional materials." No. 8:19-cv-01765-JVS (JDEx), 2022 U.S. Dist. LEXIS 242064, at *6 (C.D. Cal. Aug. 15, 2022). Similarly, in *Cadence Design Sys. v. Pounce Consulting, Inc.*, the district court found that denying alter ego liability would allow the corporations to continue a "shell game" to "avoid paying the default judgment." No. 17-cv-04732-PJH (SK), 2019 U.S. Dist. LEXIS 68125, at *19 (N.D. Cal. Apr. 1, 2019).

Here, Plaintiff's allegations show both unity of interest and an inequitable result. Plaintiff alleges that Garcia is the CEO and majority shareholder of both HYP3R and HYP3R MEDIA. But more than being the CEO and majority shareholder, Plaintiff alleges Garcia created HYP3R MEDIA soon after it was clear that a default judgment against HYP3R was about to be enforced, using the former as a vehicle to thwart collection efforts. Plaintiff alleges that Garcia "undercapitalized or failed to capitalize" HYP3R and HYP3R MEDIA and did not adhere to corporate formalities for both entities by failing to "hold shareholder meetings." The lack of separate identity of the corporations from Garcia is underscored by the fact that Garcia allegedly shares the same residential office location with HYP3R and HYP3R MEDIA. As in *Philips* and *Cadence*, Plaintiff has alleged a scheme involving the use of corporations controlled by the same party to escape paying a judgment. The four years that have elapsed since the judgment in the Canada action was entered raise additional concerns about wastage by the HYPER corporations. That the assets in question are primarily intellectual property that may diminish in value without proper maintenance heightens these concerns, and provides further reason to pierce the corporate veil, allowing recovery from the individual responsible for any diminished value. This provides

7

an additional reason why inequity would result if Garcia were not treated as an alter ego to HYP3R and HYP3R MEDIA. In sum, the Court finds Plaintiff has pled sufficient unity of interest and inequity to allow an alter ego liability theory to proceed against Garcia.

The Court turns to the substantive CUVTA elements. As discussed, Plaintiff alleges that HYP3R transferred its assets to avoid judgment in the Canada Action. The timing of the transfers invites particular scrutiny. The default order in the Canada Action was entered on September 18, 2020. On October 22, 2020, HYP3R MEDIA was incorporated. The hearing on Plaintiff's application for default judgment, at which HYP3R failed to appear, took place on April 1, 2021. Just *days* after, on April 5, 2021, HYP3R assigned its patents to HYP3R MEDIA. In June of the same year, HYP3R assigned four U.S. trademarks to HYP3R MEDIA. Plaintiff further alleges that HYP3R transferred away its remaining intellectual property, bank accounts, cash on hand, inventory, and equipment to HYP3R MEDIA and that these transfers in combination "effectively conveyed all of the Defendant HYP3R's assets away." These transfers were to an insider, as Plaintiff alleges that HYP3R MEDIA had the same director and majority shareholder as HYP3R and that HYP3R's operations were "simply continued under the Defendant HYP3R MEDIA." These satisfy at least five of the CUVTA statutory factors: whether (1) the transfer was to an insider, (2) the transfer was made after the debtor had been sued, (3) the transfer was of substantially all the debtor's assets, (4) the debtor was insolvent or became insolvent shortly after the transfer was made, and (5) the transfer occurred shortly before or shortly after a substantial debt was incurred. Cal Civ Code § 3439.04. Plaintiff has plausibly pled actual intent to hinder, delay, or defraud a creditor.

There is also a viable claim of constructive fraudulent transfer. Plaintiff alleges that the transfers were made "Without receiving a reasonably equivalent value in exchange for the transfer or obligation" and that the debtor "believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due." Cal Civ Code § 3439.05. Specifically, Plaintiff has alleged that the transfers were made "without the Defendant HYP3R receiving reasonably equivalent value." Dkt. No. 1 at ¶ 45. Further, the transfers were made after the class action judgment was entered against HYP3R, when HYP3R would have been

on notice that it would soon incur a debt it could not pay. Drawing all reasonable inferences in favor of Plaintiff as the court must in evaluating a motion to dismiss, Plaintiff has also plausibly pled constructive transfer.

*D. Conspiracy/Aiding and Abetting*

It is elementary that "a corporation cannot conspire with itself." *Leaser v. Prime Ascot, L.P.*, No. 2:20-CV-02502-DJC-AC, 2024 U.S. Dist. LEXIS 104698, at *15 (E.D. Cal. June 11, 2024). The agent-immunity rule provides that "where an agent is acting within the scope of its authority on behalf of a corporation, the agent is 'one and the same' as the corporation" and therefore "cannot form a conspiracy." *Id.*

Plaintiff has pled that Garcia was the CEO and an officer of both HYP3R corporations, as well as that Garcia was the corporations' alter ego. In either case, there could be no conspiracy (or aiding and abetting). However, the Court recognizes that Plaintiff may plead in the alternative. Should Defendants produce evidence that Garcia was not CEO of the corporations and that alter ego does not apply, that may give rise to a claim that falls outside the agent-immunity rule. Thus, the dismissal of Claims IV and V are without prejudice.

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Counts I, IV, and V is **GRANTED.** Dismissal is with leave to amend. Defendant's motion to dismiss Counts II and III is **DENIED**.

**IT IS SO ORDERED**.

Dated: 8/25/2025

_____
EDWARD M. CHEN
United States District Judge

9